UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIRECTV, Inc, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION 3:03CV007-RNC |
| ) | |
| v. ) | |
| ) | |
| , ) | |
| ) | |
| MIKE CARON et al., ) | |
| Defendant ) | |
| ) | |

## MOVANT'S LOCAL RULE 56(a)1 STATEMENT

In support of his motion for summary judgment, defendant Mike Caron hereby submits the following statement of material facts as to which defendant contends there is no genuine issue to be tried:

1. In 1999, defendant purchased a small wall safe at a tag sale in North Branford. Defendant's Affidavit, ¶2.

2. The safe was designed to be opened with a "smart card." A "smart card" A "smart card" is a plastic credit-card sized card which contains a small chip that can be electronically programmed with information and read by a smart card "reader." Defendant's Affidavit, ¶3.

3. Defendant is familiar with "smart card" technology as a result of his training and experience as a respiratory therapist, a field in which he has been employed since 1991.

Certain equipment used in defendant's field is designed to work with smart cards, such as SIDS monitors and CPAP machines. Defendant's Affidavit, ¶3.

4. The wall safe purchased by defendant came with a "smart card," a "smart card" programmer, and software. Defendant's Affidavit, ¶4.

5. The defendant learned that the "smart card" would not open the safe. Defendant believed he needed to re-program the card. He did an on-line search for "smart cards" and found numerous websites devoted to "smart card" technology and equipment. Defendant sent an e-mail to one of these sites asking about equipment he could purchase to assist him with the safe's "smart card." Based on the response he got to his e-mail, in September, 2000 defendant ordered a programmer and an unlooper. (Defendant was told the unlooper would be helpful if the "smart card" was not working due to a short circuit.). Defendant's Affidavit, ¶5.

6. After receiving the items defendant tried re-programming the "smart card," but it still didn't work. He then tried using a different card, which he obtained from a co-worker, but this did not work either. Defendant contacted the website where he had purchased the items to request a refund, but was refused. He then gave up trying to get the card to work, and threw out the safe, the programmer, and the unlooper. This occurred no later than February, 2001. Defendant's Affidavit, ¶6.

7. Plaintiff did not at any time witness defendant pirating its signal. Plaintiff's Response to Defendant's Request for Admission Number 1.[1]

---

[1] Defendant's Requests for Admissions and Plaintiff's Responses are attached as Exhibits A and B respectively to Defendant's Motion for Summary Judgment.

8. Plaintiff did not at any time observe defendant modifying the devices to unlawfully obtain its satellite signal. Plaintiff's Response to Defendant's Request for Admission Number 2.

9. In order to unlawfully intercept plaintiff's satellite signal, defendant would have required access to a satellite dish, integrated receiver/decoder and access card. Plaintiff's Response to Defendant's Request for Admission, Number 6.

10. Defendant was a subscriber to DirecTV from 1998-1999. At the time defendant discontinued service in 1999, he threw out the satellite dish as it was in poor condition and not worth saving. Defendant's Affidavit, ¶7.

11. Defendant did not own, possess, or have access to a satellite dish during the entire time he had possession of the devices at issue in this lawsuit. Defendant's Affidavit, ¶¶6, 7, 8.

12. Defendant was incapable of receiving plaintiff's satellite signal during the time he possessed the subject devices since he did not own, possess, or have access to a satellite dish. Defendant's Affidavit, ¶8; Plaintiff's Response to Defendant's Request for Admission, Number 6.

13. Defendant never intercepted or attempted to intercept the satellite signal of DirecTV or any other satellite broadcaster. Defendant's Affidavit, ¶8.

14. Defendant never assisted any other person in intercepting plaintiff's signal, and never procured another person to do so. Defendant's Affidavit, ¶8.

15. Defendant never manufactured, assembled, or modified any unlawful or "pirate device." Defendant's Affidavit, ¶8.

16. Defendant never used either of the subject devices in connection with any DirecTV equipment or system. Defendant's Affidavit, ¶8.

_____
Kenneth D. Quat
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848
978-371-2296 (fax)
Conn. Fed. Bar Number: 24512

Connecticut address pursuant to Local Rule 83.1(c):

Mirto, Ketaineck, Barrett & DiCrosta, P.C.
P.O. Box 428
West Haven CT 06516

Certificate of Service

I hereby certify that a copy of the foregoing has been served on plaintiff's counsel by mailing same via first class mail, postage prepaid, to Matthew D. Gordon, Esquire, Skelly Rottner P.C., 433 S. Main St., Suite 305, W. Hartford CT 06110.

_____

Dated: 1/26/04