FILED

IN THE UNITED STATES DISTRICT COURT FOR 2004 MAR -4 P 2: 52
THE DISTRICT OF CONNECTICUT
U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Case No. 03:CV007-RNC |
| MIKE CARON, CHIP FALCONE, | § | |
| MIKE IASEVOLI, MICHAEL | § | |
| MASTRO, JR., HECTOR MONTALVO, | § | |
| AND GEORGE MORGAN | § | |
| | § | |
| Defendants. | | |

### DIRECTV'S MEMORANDUM OF LAW IN OPPOSITION TO CARON'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), files this Brief in Opposition to

Defendant Mike Caron's ("Caron"or "Defendant") Motion for Summary Judgment

and Brief in Support (the "Motion") and in support hereby represents as follows:

### I. PRELIMINARY STATEMENT

Plaintiff brought federal and state law claims against Defendant for

participation in, or aiding others in, the surreptitious possession and/or use of devices

designed to intercept and decrypt DIRECTV's protected satellite communications.

Plaintiff seeks damages and injunctive relief.  Defendant seeks summary judgment

1

ORAL ARGUMENT REQUESTED.

primarily based on his own affidavit - claiming, in essence, that the devices were purchased for research and that he did not own a satellite dish. Defendant seeks summary judgment on all of Plaintiff's claims premised on the theory that Plaintiff's circumstantial evidence does not raise a fact issue concerning Defendant's actual and wrongful interception of DIRECTV broadcasts. In essence, Defendant's request for summary judgment can be reduced to this simple proposition: Because DIRECTV did not produce direct evidence -- such as an admission by Defendant or an eyewitness account of Defendant watching or assisting another in watching a pirated television broadcast -- Plaintiff fails to raise a genuine issue of material fact on one element required for Plaintiff's claims. The Defendant's position is not supported by law.

Summary judgment is unwarranted in this case. Through this response, DIRECTV will demonstrate that Defendant purchased devices that are primarily designed for signal piracy (which Defendant apparently does not dispute), that Defendant had the equipment necessary to intercept DIRECTV's signal and that Defendant utilized piracy information sources on the Internet to accomplish his goals (and, regardless of what he is willing to tell the Court, he left a trail doing it). This conflicting evidence raises a genuine issue of fact precluding summary judgment. Because Plaintiff's evidence and reasonable inferences derived from this evidence raise genuine issues of material fact, Defendant's Motion for Summary Judgment should be denied in its entirety.

## II. STATEMENT OF FACTS

### A. General Background of DIRECTV's System and Piracy

DIRECTV is the nation's leading direct broadcast satellite programming provider, delivering over 225 channels of television and other programming to more than 12 million customers in the United States. **Exhibit B**, (*Whalen Aff*, at 1). DIRECTV satellite programming currently includes major cable networks, local stations, studio movies and special events programming, as well as a variety of sports and other special interest programming. *Id.* at 2. DIRECTV has invested billions of dollars to develop its direct broadcast satellite system. *Id.* DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. *Id.* DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. *Id.* Each customer obtains system hardware (including a receiver and a small satellite dish), is provided with a DIRECTV Access Card and is required to establish an account with DIRECTV. *Id.* Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV. *Id.*

DIRECTV offers several different satellite television packages. DIRECTV offers 40 premium movie channels, including several Home Box Office®, Showtime®, Cinemax®, Movie Channel®, and Encore® channels, the Family Pack™

and local channels for many markets throughout the United States. *Id.* Importantly, DIRECTV targets individuals interested in specialized sports packages and offers subscriptions to those specialized sporting packages, including NFL Sunday Ticket™, NBA League Pass™, NHL Center Ice™, MLB Extra Innings™, ESPN Game Plan™, ESPN Full Court™, MLS/ESPN Shootout™, WNBA Season Pass™, and Mega March Madness™. *Id.* Each of these packages can be purchased independent of the basic subscription fee. *Id..* DIRECTV also offers specialized one-time viewing movies and events in the form of pay-per-view channels, countless pay-per boxing and special event matches. *Id.* at 3. Acquiring the rights to distribute all of this television programming and service requires an incredible expense to the company. *Id.* For that reason, DIRECTV diligently protects its distribution rights. *Id.*

Since DIRECTV has acquired such a complete line-up of quality channels, movies, and specialized programs and sporting events, individuals go to great lengths to circumvent DIRECTV's encryption and security measures. *Id.* The number of individuals involved in the manufacture and sale of illegal devices used to circumvent DIRECTV's encryption technology has increased since DIRECTV began operations in 1994. *Id.* The business of piracy can be a lucrative endeavor both for the large manufacture and the small dealer. *Id.* Records obtained pursuant to raids in Canada and in the United States show that pirates have generated substantial revenues from the distribution and manufacture of illegal access devices, often amounting to millions of dollars for an individual distributor of pirate devices. *Id.* Obviously, there is a

substantial black market for pirate access devices used in conjunction with DIRECTV systems, and DIRECTV is pursuing all available avenues to curtail those sales. *Id.*

Piracy itself by manufacturers and individuals affects DIRECTV immeasurably. *Id.* An individual using one pirated access card has access to over a million dollars in annual programming services and would not have to pay for any of it. *Id.* While that figure includes the value of every pay-per-view movie even though the same movie is shown several times a day, and not many people will view one movie more than once, the value of subscription and movies viewed only once is well over $150,000.00 annually. *Id.*

### B. Evidence of Caron's Purchases of Devices Designed for Piracy

Several individuals and companies have engaged in the manufacture and sale of illegal equipment used to circumvent DIRECTV's encryption technology. *Id.* at 4. On or about May 25, 2001, DIRECTV executed a Writ of Seizure, with the assistance of local law enforcement, at the mail shipping facility used by a company by the name of DSS-Stuff. *Id.* The mail facility, known as Fulfillment Plus, was located in Santa Ana, California. *Id.* Subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records. *Id.* Those records evidence Defendant Mike Caron's purchase of a Terminator Unlooper/Vector Next Gen Combo. **Exhibit D**, (*Madvig Aff*); *Id.* Caron's purchase consisted of two devices – a Terminator Unlooper and a Vector Next Generation programmer. *Id.* Based on the Fulfillment Plus purchase record, the devices were ordered by Mike Caron on or about September 5, 2000 using

the email address of major222@hotmail.com. **Exhibit D,** (*Madvig Aff*). Each of the devices are primarily designed to circumvent DIRECTV's access controls. **Exhibit A-1** (*Expert Report: The Terminator Unlooper*, at 1; *Expert Report: Analysis of a Vector NextGen Device*, at 1). Caron does not dispute that he purchased the devices in question.

The Terminator Unlooper device purchased by Caron is known as an "unlooper" which is primarily designed and marketed to be used in order to gain unauthorized access to DIRECTV satellite programming without payment to DIRECTV. **Exhibit A-1** (*Expert Report: The Terminator Unlooper*, at 1). More particularly, the "unlooper" is designed to restore functionality to illegally modified DIRECTV access cards that were disabled by misuse or by DIRECTV's electronic security measures commonly referred to as Electronic Counter Measures or "ECMs." **Exhibit A-1**; (*Expert Report and Disclosures of Bill Gatliff of Netrino, LLC*, at 7-8); **Exhibit B,** (*Whalen Aff*, at 4-5). An ECM is sent electronically by DIRECTV by satellite and is intended to disable illegally modified DIRECTV access cards that are being used to receive DIRECTV programming without authorization. **Exhibit A-1**; (*Expert Report and Disclosures of Bill Gatliff of Netrino, LLC*, at 7); **Exhibit B,** (*Whalen Aff*, at 5). Once these cards are disabled, (or are "looped" as the condition is known), they no longer allow free viewing of DIRECTV programming without the additional use of other electronic devices or equipment to return the illegal functionality. **Exhibit A-1**; (*Expert Report and Disclosures of Bill Gatliff of Netrino, LLC*, at 7-10); **Exhibit B,** (*Whalen Aff*, at 5). Individuals interested in continuing the

6

illegal receipt of DIRECTV programming use an unlooper to restore functionality to a disabled card, thus allowing the access card to once again receive DIRECTV programming for free. *Id.* Indeed, the term "unlooper" was coined specifically to refer to devices that restore functionality to "looped" pirated DIRECTV access cards. *Id.*

Purchase and use of an unlooper is a clear indication of the customers' eagerness to continue illegal access to DIRECTV television programming without payment to DIRECTV. **Exhibit B**, (*Whalen Aff*, at 5). Furthermore, purchase of an unlooper indicates that the person purchasing it already possessed one or more illegally modified DIRECTV access cards. DIRECTV is unaware of any legitimate commercial or private use for unloopers. *Id.*

The Vector Next Generation programmer purchased by Defendant from DSS-Stuff on September 5, 2000 is designed, marketed, and used to permit the illegal programming of — writing of code to — valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. **Exhibit A-1**, (*Expert Report: Analysis of a Vector NextGen Device*, at 1-4); **Exhibit B**, (*Whalen Aff*, at 6). By way of example, the programmer is used (i) to "clone" Access Cards, enabling an unauthorized (or unactivated) Access Card to decrypt the same programming as a particular authorized (or activated) Access Card; or (ii) to program Access Cards to receive all DIRECTV programming, including pay-per-view events, without payment to DIRECTV. *Id.*

Importantly, the unlooper purchased by Caron is designed to restore functionality to illegally modified Access Cards disabled by misuse or by DIRECTV's electronic counter measures. **Exhibit B**, (*Whalen Aff*, at 6). Therefore, it is reasonably likely that Caron possessed an illegally modified Access Card and began receiving DIRECTV's transmissions without authorization prior to the purchase of the devices on September 5, 2000. *Id.* The DIRECTV account history, attached as **Exhibit C** *(Fong Affidavit)* and incorporated by reference, directly supports the conclusion that Caron actually began receiving DIRECTV programming without authorization prior to the purchase in question. *Id.*

### C. Evidence of the Marketing of the Devices

Information on the website operated by DSS-Stuff from which the defendant's purchases were made describe devices primarily designed and used for the purpose of pirating DIRECTV programming. *Id.* Prints of those websites are attached hereto as **Exhibit B** (*Whalen Aff*, at 6-7 referencing Exhibit A-2 within Exhibit B) and are the type of information typically relied upon by DIRECTV in assessing the design, marketing and purpose of devices. *Id.*; *see also*, (*Gatliff Aff*, at 2). The way in which DSS-Stuff marketed its devices supports the conclusion that its devices were produced primarily for the purpose of receiving DIRECTV programming for free. *Id.* The Internet web site operated by the company and attached hereto was devoted to selling devices to obtain DIRECTV satellite programming without payment to or authorization from DIRECTV. *Id.* Additionally, the web site made it abundantly clear that the bootloaders, unloopers, programmers and other similar devices purchased

from their site are intended to be used for receiving DIRECTV programming for free. *Id.*

### D. Evidence of Caron's Activity in the Internet Piracy Community

DIRECTV has been able to develop evidence that Caron, using a name of "major222," visted several websites relating to the piracy of DIRECTV's signal, including www.huabc.com and www.searchingforsignal.com. **Exhibit H**, (*Walker Aff*); **Exhibit B**, (*Whalen Aff*, at 7). Each of these web sites was dedicated to the distribution of software and information related to DIRECTV piracy. *Id.* Many of Caron's posts on searchforsignal.com in 2002 and 2003 mention use of "h" and "hu" cards, (specifically referring to DIRECTV's P2 and P3 access cards), receiving DIRECTV's investigation letters, getting served with this lawsuit, seeking counsel and stories that he told DIRECTV and his counsel. **Exhibit H-1**, at 1-19. Caron's incriminating postings plainly show his involvement in piracy of DIRECTV's programming. *Id.* The huabc.com website, which Caron joined on or about October 6, 2001, provides information regarding DIRECTV piracy. **Exhibit H-2**. The name of the cite – "huabc" – again refers to DIRECTV's P3 access card (known in the piracy community as "HU" cards) and contains discussion forum references such as "Unlooping HU (P3)" and "HU Card" (which is a discussion related to problems associated to using an illegally modified HU Card). **Exhibit B**, (*Whalen Aff*, at 7).

9

### E. Evidence of Unauthorized Access to DIRECTV Programming Shown in Caron's DIRECTV Account History

Caron's account evidences unauthorized access to DIRECTV satellite programming. Caron's DIRECTV account shows programming and numerous pay-per-view purchases between January 24, 1999 and April 1999. **Exhibit B,** (*Whalen Aff,* at 7-9). Caron then disconnects service on June 25, 1999 and told the customer service representative that he "sold house/equip" indicating that he was leaving that residence. *Id.* Importantly, the purchase of an unlooper indicates prior unauthorized access; thus, Defendant's disconnect in June of 1999 and probable unauthorized access to DIRECTV programming at that point or shortly thereafter is consistent with his purchase of the unlooper in September 2000. *Id.* Obviously, if Caron obtains access to DIRECTV programming without authorization, he would not need to keep his DIRECTV services active. *Id.*

Caron then purchased additional receivers and access cards and reconnected his services on January 24, 2002 **at the same address** and **under the same telephone number**. *Id.* Apparently, despite telling DIRECTV he was moving, he had not moved at all. *Id.* Caron's need to purchase new receivers in 2002 is an indication that he had damaged the access cards he had in his possession in 1999 through prior misuse. *Id.* Each of the receivers used by Caron prior to his disconnect in June of 1999 contained DIRECTV P2 access cards, (otherwise known in the piracy community as "H" cards), which can be used with the equipment purchased by Caron in September of 2000 to gain access to DIRECTV programming without authorization. *Id.* Again, due to

10

DIRECTV's efforts to combat piracy through ECM's, pirated access cards can become damaged while in use. *Id.* Damage to the pirated access cards explains Caron's need to purchase additional access cards and reconnect programming services in January 2002. *Id.*

Based on the account history and gaps in his programming services, Caron's purchase of several devices primarily designed to intercept DIRECTV's programming, and his posting and internet activity, there is little question that Caron gained unauthorized access to DIRECTV programming. Accordingly, Defendant's Motion for Summary Judgment should be denied.

## III. SUMMARY JUDGMENT EVIDENCE AND UNPUBLISHED AUTHORITY

DIRECTV attaches the following summary judgment evidence and case law which is hereby incorporated by reference in support of its response to Defendant's Motion for Summary Judgment:

**EXHIBIT A** – Declaration of Bill Gatliff ("*Gatiff Aff*");

> **Exhibit A-1**: Expert reports on devices specifically purchased by Defendant Caron, including:
> *Expert Report and Disclosures of Bill Gatliff of Netrino, LLC*
> *Expert Report: The Terminator Unlooper*
> *Expert Report: Analysis of a Vector NextGen Device*

**EXHIBIT B** – Affidavit of James F. Whalen ("*Whalen Aff*");

> **Exhibit A-1**: Fulfillement Plus document evidencing Caron's purchase of the devices at issue;
> **Exhibit A-2**: True and correct copy of DSS-Stuff webpages from which Caron made his purchases;

**EXHIBIT C** - Affidavit of Carol Fong-Hilton;

> **Exhibit 1:** Defendant Caron's DIRECTV account history.

**EXHIBIT D** – Declaration of Scott Madvig supporting Caron's purchase record ("Ma*dvig Aff*");

> **Exhibit A:** Defendant Caron's purchases from DSS-STUFF.com.

**EXHIBIT E** – *DIRECTV, Inc. v. Trone, et al,* Cause No. SA-CV-01-370 DOC (ANx) (C.D.California, May 25, 2001) (Memorandum of Opinion and Order)

**EXHIBIT F** – *DIRECTV, Inc. v. Disalvatore,* Cause No. 5:02CV00706 (N.D. Ohio, May 21, 2003) (Memorandum of Opinion and Order);

**EXHIBIT G** – *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077 (C.D. Cal. March 8, 2002); Memorandum Opinion in Cause No. C-02-4102-MWB; *DIRECTV, Inc. v. Manuel Calamanco, et. al., defendants,* in the United States District Court for the Northern District of Iowa, Western Division (Jan. 21, 2003); Civ. No. 03-20452-CIV; *DIRECTV, Inc. v. Cindy Garcia, et. al., defendants;* in the U.S. District Court for the Southern District of Florida (May 21, 2003); Civil Action No. H-03-0836; *DIRECTV, Inc. v. La Andy, et. al., defendants;* in the U.S. District Court for the Southern District of Texas, Houston Division (June 17, 2003); Civil Action No. A-03-CV-321-JN; *DIRECTV, Inc. v. Clarence Gerke, et. al., defendants;* in the U.S. District Court for the Western District of Texas, Austin Division (July 14, 2003); *DIRECTV, Inc. v. Drury,* 282 F. Supp. 2d 1321 (M.D. Fla. July 26, 2003); *DIRECTV, Inc. v. Karpinsky* 274 F.Supp. 2d 918 (E.D. Mich. July 31, 2003); Memorandum Opinion in Civ. No. 03-CV-3534; *DIRECTV, Inc. v. Alex Gatsiolis, et. al., defendants;* in the U.S. District Court for the Northern District of Illinois (August 27, 2003); Memorandum Opinion in Civ. No. 03-CV-3504: *DIRECTV, Inc. v. Fermin Perez, et. al., defendants;* in the U.S. District Court for the Northern District of Illinois (August 27, 2003); *DIRECTV, Inc. v. James* 2002 U.S. Dist. LEXIS 26930 (M.D. Fla. (August 28, 2002); *DIRECTV, Inc. v. Tyson,* 2003 U.S. Dist. LEXIS 18432 (N.D. Tex. October 15, 2003); *DIRECTV, Inc. v. Culpepper,* 2003 U.S. Dist. LEXIS (21400) (N.D. Tex. November 26, 2003); *DIRECTV, Inc. v. Dumais,* 2003 U.S. Dist. LEXIS 18431 (N.D. Tex. November 26, 2003); *DIRECTV, Inc. v. Moreno,* 2003 U.S. Dist. LEXIS 22219 (D. N.J. (December 11, 2003).

**EXHIBIT H** – Affidavit of Lacey Walker attaching true and correct copies of evidence obtained by ICG, Inc. in relation to Defendant Caron's internet activity ("*Walker Aff*").

> **Exhibit H-1:** ICG exports showing Defendant Caron's activities in piracy forums on the Internet;
> **Exhibit H-2:** ICG exports for huabc.com and webprints of www.huabc.com relating to Defendant Caron;

**EXHIBIT I** - Case No. 4:02CV01940ERW; *DIRECTV v. Hurwitz, et. al.*; in the United States District Court for the Eastern District of Missouri, Eastern Division (Memorandum and Order denying summary judgment, February 5, 2004).

Each of the attached exhibits demonstrate Caron's involvement with modifying, using or attempting to use devices primarily designed for the purpose of the surreptitious interception of DIRECTV's satellite programming. At a minimum, genuine issues of material fact exists for each of DIRECTV's claims against Caron. Accordingly, Caron's Motion should be denied.

## IV. ARGUMENT IN OPPOSITION TO SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-248 (1986). To demonstrate that no genuine issue of material fact exists, the moving party must point out "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Considering the affidavit testimony and documentary evidence provided to the court, the non-moving party is indulged with all favorable inferences. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Existing Evidence Indicates That Caron Intercepted DIRECTV's Programming In Violation of Communications Acts

DIRECTV brings several claims against Caron related to his possession, modification and use of illegal pirate access devices for the purpose of surreptitiously obtaining access to DIRECTV satellite programming without authorization. DIRECTV claims that Caron violated 47 U.S.C. § 605(a) by:

(1) intercepting a radio communication and divulging or publishing the existence, contents, substance, purport, effect, or meaning of such intercepted communication to himself or another;

(2) " . . . receiv[ing] or assist[ing] in receiving any interstate or foreign commun ication by radio and use such communication . . . for his own benefit . . . .";

(3) ". . . having received any intercepted radio communication . . . knowing that such communication was intercepted . . . divulged or published the existence, contents, substance, purport, effect or meaning of such communication or use[d] such communication . . . for his own benefit. . . ."

*See* 47 U.S.C. § 605(a).[1]  In response, Caron argues that there is no evidence of "use" of DIRECTV's communications.  Essentially, Caron's sole argument for summary judgment is that DIRECTV cannot provide a witness that sat in Caron's living room while he intercepted DIRECTV programming.  This standard of proof completely ignores the value of circumstantial evidence and would, frankly, create an impenetrable fortress within which Caron, and thousands like him, would be free to pirate satellite signals.  In any event, as demonstrated by the attached evidence, much of it created by Caron himself, there is, at a minimum, a fact issue relating to Caron's interception of DIRECTV's communications.  Accordingly, summary judgment is improper.

DIRECTV provides uncontroverted evidence that establishes, or raises an inference to support, each element of each claim asserted.  First, DIRECTV has explained its method of sending subscription satellite programming and methods used by individuals to avoid paying for the programming.  **Exhibit B**, (*Whalen Aff.*, at 1-3); **Exhibit A-1**, (all *Expert Reports*).  DIRECTV explains and demonstrates how it came into possession of the names of purchasers of these electronic devices.  **Exhibit B**, (*Whalen Aff.*, at 4); **Exhibit D**, (*Madvig Aff*).  Plaintiff presents proof specifying the devices purchased by Defendant and how these devices are used for illegal

---

[1] DIRECTV has also asserted claims for violations of 18 U.S.C. § 2511 and § 2512 and conversion based on the same or similar conduct of possessing illegitimate pirate access devices, obtaining protected communications and using the communications without authorization. *See* 18 U.S.C. §§ 2511 and 2512.  Essentially, Caron's only complaint regarding DIRECTV's § 2511 and conversion claim is that DIRECTV cannot prove the element of illicit receipt, interception, disclosure or use.  Therefore, evidence presented by DIRECTV in this Response in relation to the 47 U.S.C. §605(a) violation should apply equally to violations of sections 2511 and 2512 as well as to DIRECTV's conversion claim.

interception of DIRECTV programming. **Exhibit D**, (*Madvig Aff*); **Exhibit B**, (*Whalen Aff*, at 4-6); **Exhibit A-1**, (all *Expert Reports*). Based on the sole function of the devices in question, these facts alone raise the inference that Defendant used or assisted others in using these devices to wrongfully intercept and display DIRECTV programming. *See e.g., Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455 (D. Conn. 2000).

Moreover, unlike the *Bush, McFadden*[2] and other cases relied upon by the Defendant, DIRECTV has also demonstrated that Caron had access to DIRECTV equipment and the devices in question. **Exhibit B**, (*Whalen Aff*, at 7-8). He possessed the necessary DIRECTV equipment to acquire the DIRECTV signal. Further, DIRECTV has presented evidence of the Defendant's statements to other individuals on piracy-related websites regarding his activities. In one such post on August 20, 2002, to a thread entitled "on to the HU," under the alias "major222," Caron writes:

> "i need help with hu programming. i had just gotten the h's worked out. DAMN!!! what do i need to get the hu cards going and who is a reliable source to get these from? thanks"

**Exhibit H-1**, at 3. After receiving DIRECTV's first letter in January of 2002, Caron wrote the following post:

> "ok, here's the scoop. i spoke with the attorney today, he sounded right out of high school. he says they raided some shop back in the spring i

---

[2] In the *Bush* case, DIRECTV inadvertently failed to attach any of the evidence to its response and the Court would not reconsider the filings at a later time. In *McFadden*, the Court believed that DIRECTV's inability to show that the Defendant EVER purchased a DIRECTV system was fatal. This position ignores the fact that DIRECTV equipment is readily available on the secondary market and DIRECTV would have no ability to track purchases from that market. *See,* Case No. 4:02CV01940ERW; *DIRECTV v. Hurwitz, et. al.*; in the United States District Court for the Eastern District of Missouri, Eastern Division (Memorandum and Order denying summary judgment, February 5, 2004) **(Exhibit I)**. In any event, this position does not help Caron, since there is no question that he purchased two DIRECTV systems.

guess and they got my name off the computer telling them i ordered a
programmer/unlooper.  he tried to scare me with the potential fines if it
went to court then said negotiations start at $2,500.00.  what a cheap
whore he is!!  i told him i got burnt with that purchase because it didn't
work and the company wasn't backing it up and so i through it out.  i
told him i wasn't going to pay a cent because buying equipment i din't
think was illegal, just stealing the signal was.  i also told him that it was
a dish network card I was trying to program . . . lol"

**Exhibit H-1**, at 16.  There is little question that Caron was involved in piracy and

discussions in piracy-related websites.  While (1) the purchase of the devices, (2) the

known intended purpose of the devices, (3) Caron's account history and (4) Caron's

comments on the websites do not consitute to a person sitting in his living room

watching him while he is intercepting DIRECTV programming, DIRECTV's evidence

is strong circumstantial evidence of his interception.  Considered together, the

uncontroverted evidence is more than adequate to raise a genuine issue of material fact

regarding whether Caron pirated or assisted in the pirating of DIRECTV broadcasts.

Importantly, direct evidence of use is not required to show violation of federal

communications law. *See Community TV Sys. v. Caruso*, 284 F.3d 430, 436 (2nd Cir.

2002).  Computer records and receipt of the devices will raise a ***presumption*** of a

statutory violation. *Id.*  Circumstantial evidence is not only sufficient, but may also be

more certain, satisfying and persuasive than direct evidence. *Mechalic v. Cleveland

Tankers, Inc.*, 364 U.S. 325, 330 (1960).  Moreover, circumstantial evidence is often

the only proof of a crime or civil wrong committed privately. *See e.g., Apple

Computer, Inc. v. Microsoft*, 35 F.3d 1435, 1442 (9th Cir. 1994); *United States v.

Fisher*, 912 F.2d 728, 730 (4th Cir. 1990) (conviction for intent to sell narcotics based

purely on circumstantial evidence that the defendant possessed more drugs than she could have personally used); *DIRECTV, Inc. v. Disalvatore*, Cause No. 5:02CV00706 (N.D. Ohio, May 21, 2003) (Memorandum of Opinion and Order) (*Exhibit F*). The circumstances presented weigh heavily in favor of the fact that Caron did intercept DIRECTV programming. At a minimum a genuine issue of material fact exists precluding summary judgment.

Additionally, Caron's credibility is in question. Caron told DIRECTV representatives in 1999 that he was selling his home and his equipment (the same transaction that he claims resulted in him disposing of his system in this motion). **Exhibit B**, (*Whalen Aff*, at 8). However, this never happened. Also, DIRECTV's evidence shows that Caron has associated with piracy websites and told DIRECTV representatives various things in relation to his purchases. **Exhibit H-1**, at 1-19; **Exhibit H-2**. Where, as here, "the credibility of the movant's witness is challenged by the opposing party and a specific basis for possible impeachment is shown, summary judgment should be denied and the case allowed to proceed to trial." *Bryant v. Wagoner*, 1998 U.S. Dist. Lexis 21529, *9-10 (M.D. N.C.) (citing *Carroll v. United Steel Workers of Am.*, 498 F.Supp. 976, 978 (D. Md.), *aff'd*, 639 F.2d 778 (4th Cir. 1980)); *Outlaw v. Newkirk*, 259 F.3d 833, 1838 (7th Cir. 2001) (same); *Sandt Technology Ltd. v. Resco Metals & Plastics Corp.*, 264 F.3d 1344, 1357 (Fed. Cir. 2001) (same) (quoting *Cross v. United States*, 336 F.2d 431, 434 (2d Cir. 1964)).

Accordingly, the evidence presented herein raises a genuine issue of fact relating to DIRECTV's claim for violations of federal communications law.

### C. DIRECTV's Evidence Supports its Section 2511 Claim

As stated, DIRECTV's analysis of Caron's argument against its Section 605(a) claim is equally applicable to DIRECTV's Section 2511 claim. Therefore, in responding to Caron's challenge to DIRECTV's Section 2511 claim, DIRECTV refers the Court to its response in section (IV)(B) of this Response, above.

### D. Basic Reading Of Section 2520 Provides Cause Of Action Under Section 2512

Defendant's contention that a violation of section 2512(b) cannot be asserted as a private right of action should be rejected because 18 U.S.C. § 2520 expressly confers such a private right of action. Numerous courts have examined this very question and denied a defendant's request for dismissal based upon the theory that section 2512 does not provide a private right of action. **Exhibits G**. As noted in Civil Action no. A-03-CV-32 1-in; *DIRECT V. Inc. v. Clarence Gerke, et. al.*,; in the U.S. District Court for the Western District of Texas, Austin Division (July 14, 2003), Section 2512 is part of the Chapter 119 of Title 18 (the "ECPA") which also states that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Section 2520 thus clearly confers a private right of action permitting DIRECTV to sue Defendant for his violations of Section 2512. Plaintiff alleges that its electronic satellite communications were intercepted and used in violation of the ECPA and that Defendant engaged or participated in that violation,

including by possessing and using devices prohibited by section 2512(1)(b). Plaintiff thus asserts a claim against Defendant that is expressly within the private right of action conferred by Section 2520. See also, e.g., *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019, 1022 (D. Nebr. 1991); *DIRECTV, Inc. v. EQ Stuff Inc.*, 207 F. Supp. 2d 1077, 1084 (C.D. Cal. 2002).

Each decision cited by Caron, finds at its base the *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir. 1985), decision. In examining *Flowers*, it is important to note that nowhere in that case does the Court hold that violation of Section 2512 cannot support civil liability. Rather, the Court carefully limited its holding to sellers or manufacturers of illegal equipment who have not acted to intercept, disclose or use protected communications. E.g., *Flowers*, 773 F.2d at 589 ("Therefore, we hold that Section 2512 provides by implication no private cause of action against the seller or manufacturer of a device primarily useful for wiretapping."). *Flowers* does not address the question of whether one who intercepts, discloses or uses protected communications can be civilly liable under Section 2512.

Responsibly, several courts have looked at the protection to be provided by Congress in enacting Section 2512. Although the "public as a whole" may have benefited by the removal from the marketplace of rudimentary devices for intercepting wire or oral communications that were at issue in *Flowers*, the complex electronic communications interception devices reached by the amended Section 2512 are far less a threat to the public as a whole than to the particular victim in this case. As

recently recognized, DIRECTV has this right of action under Section 2512 because it:

> decreases the burden on already overextended federal prosecutors to pursue criminal convictions under this statute. Moreover, potential plaintiffs whose electronic communications are being intercepted are equipped with the incentives to initiate litigation to protect their private interests. Granting that class of plaintiffs a broad right of action will help to guarantee the collapse of the manufacture, distribution, and use network for devices to intercept electronic communications.

See Memorandum Opinion in Civ. No. 03-CV-3534, *DIRECTV v. Gatsiolis*, at 5 (August 27, 2003) (attached hereto as **Exhibit G**). Indeed, the Pirate Access Devices at issue have one purpose—intercepting DIRECTV programming—and only one possible victim—DIRECTV.

Importantly, DIRECTV alleges in both its second and third claims that its electronic satellite communications were "intercepted, disclosed and/or intentionally used in violation" of Section 2512. Thus, *Flowers* is not controlling authority and DIRECTV asserts a claim against Defendant that is expressly within the private right of action that Section 2520 confers.

To the extent Caron's discussion of Section 2512 is an attack on the factual sufficiency of DIRECTV's claims, summary judgment is still improper. On facts virtually identical to those presented by DIRECTV here, and without requiring evidence of interception of broadcasts, the court in *DIRECTV, Inc. v. Disalvatore* determined that the defendants violated section 2512(1)(b). The court found that the defendants:

> violated section 2512(1)(b) of the ECPA, which prohibits the manufacture, assembly, possession or sale of any electronic device, knowing or having reason to know that the device's design renders it

primarily useful for the surreptitious interception of electronic communications and that the device had or would be sent in interstate commerce. As noted above, the defendants' possession of the devices, as well as the devices' illegal purpose and defendant's knowledge of that illegal purpose, are undisputed facts. The court further finds that the invoices containing the defendants' shipping addresses, which indicate the purchase through online vendors and shipping to defendants' homes, constitute sufficient evidence that defendants caused the devices at issue to be shipped in interstate commerce. Plaintiff DIRECTV is entitled to summary judgment on the ECPA claim.

Disalvatore Memorandum of Opinion and Order (*Exhibit F*) at 12-13.

As in *Disalvatore,* DIRECTV demonstrates that the purpose of the devices is the surreptitious interception of DIRECTV broadcasts and that the Defendant had knowledge of its illegal purpose from the website advertisements.  Further, the device in question has been judged to be primarily of assistance in the unauthorized use of decryption of DIRECTV signal. *See* **Exhibit E**.  Defendant does not controvert these facts, and in fact admits to the purchase in question.  Defendant, accordingly, is not entitled to summary judgment on DIRECTV's section 2512 cause of action.

### E. The Evidence Presented Establishes Defendant's Involvement In Modifying DIRECTV Access Cards

Caron summarily challenges DIRECTV's action under Section 605(e)(4) by citing his affidavit and that DIRECTV cannot present a witness who saw Caron modify a device.  However, DIRECTV has already presented evidence in the form of Caron's own statements showing that he ". . . had just gotten the h's worked out".  **Exhibit H-1**, at 3. The reference is obviously to DIRECTV's P2 access cards. *See* **Exhibit B**, (*Whalen Aff,* at 8).  Additionally, the unlooper and programmer purchased by Caron were designed to modify DIRECTV access cards.  **Exhibit A-1** (all *Expert*

*Reports*).  Thus, there is evidence creating, as least, a fact issue as to Caron's activity in modifying DIRECTV access cards, and summary judgment should be denied.

### F. DIRECTV's Conversion Claim is Equally Supported

Defendant's argument that DIRECTV has no evidence of actual interception of its programming is clearly erroneous.  As stated, DIRECTV's analysis of Caron's argument against its Section 605(a) claim is equally applicable to DIRECTV's conversion claim.  Therefore, in responding to Caron's challenge to DIRECTV's conversion claim, DIRECTV refers the Court to its response in section (IV)(B) of this Response, above.

## V. CONCLUSION

Based upon the foregoing argument and evidence, Plaintiff, DIRECTV, Inc., respectfully requests that the Court deny Defendant, Mike Caron's, Motion for Summary Judgment.

> Respectfully submitted,
> PLAINTIFF, DIRECTV, INC.

Date: *March 4, 2004*                By  *Matthew Dallas Gordon*
> Matthew D. Gordon
> Skelley Rottner P.C.
> P.O. Box 340890
> Hartford, CT  06134-0890
> (860) 561-7077
> Fed. Bar No. ct02355

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, postage prepaid to the following counsel of record and pro se parties on March 4, 2004:

Kenneth D. Quat, Esq.
132 Great Road, Suite 200
Stow, MA 01775
*978-369-0848*
*978-371-2296 (fax)*
*For defendant, Mike Caron*

Stephen R. Ketaineck, Esq.
140 Captain Thomas Boulevard
P.O. Box 428
West Haven, CT 06516
*203-932-2225*
*203-934-4834 (fax)*

_____
Matthew D. Gordon

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

DIRECTV, Inc., §
§
**Plaintiff,** §
§
**V.** §  Case No. 03:CV007-RNC
§
MIKE CARON, CHIP FALCONE, §
MIKE IASEVOLI, MICHAEL §
MASTRO, JR., HECTOR MONTALVO, §
AND GEORGE MORGAN §
§
**Defendants.** §

## DIRECTV'S LOCAL RULE 56(a)(2) STATEMENT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), files Local Rule 56(a)(2) Statement

in support of its response to Defendant, Mike Caron's, Motion for Summary

Judgment and would show the court as follows:

## I. RESPONSES TO DEFENDANT'S STATEMENT

1.    The Plaintiff can neither admit nor deny that Defendant purchased a

"wall safe" and therefore leaves the defendant to his proof.

2.    The Plaintiff can neither admit nor deny that Defendant purchased a

"wall safe" that worked with "smart cards" and therefore leaves the defendant to his

proof.

3.    DIRECTV admits that Defendant is familiar with "smart card"

technology.  The Plaintiff can neither admit nor deny that Defendant works with

1

smart cards as a respiratory therapist in relation to SIDS monitors and CPAP machines and therefore leaves the defendant to his proof.

4.    The Plaintiff can neither admit nor deny that Defendant purchased a "wall safe" that came with smart cards and a programmer and therefore leaves the defendant to his proof.

5.    DIRECTV can neither admit nor deny that Defendant worked on "smart cards" and a "wall safe" and therefore leaves the defendant to his proof. DIRECTV denies that he purchased the Vector Next Generation Programmer and Terminator Unlooper for his safe. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 16.

6.    DIRECTV can neither admit nor deny that Defendant worked on "smart cards" and a "wall safe" and therefore leaves the defendant to his proof. DIRECTV denies that he purchased the Vector Next Generation Programmer and Terminator Unlooper for his safe. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 16.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    DIRECTV admits that Defendant was a subscriber and he discontinued service in June of 1999. However, DIRECTV denies that threw out his receivers and dish. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

11.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

12.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

13.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

14.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

15.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

16.    Denied. **Exhibit A-1** (Expert Reports, at 1); **Exhibit B** (Whalen Aff, at 9); **Exhibit H-1**, at 1-3.

## II. **DISPUTED ISSUES OF MATERIAL FACT**

DIRECTV has identified the following disputed issues of material fact which warrant a denial of Defendant's Motion for Summary Judgment.

1.    Whether or not Defendant received and/or assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization from or payment to DIRECTV.

2.    Whether or not Defendant Caron knew or should have known that receiving and/or assisting others in receiving DIRECTV's satellite transmissions of

television programming without authorization or payment to DIRECTV was illegal and prohibited.

3.     Whether or not the Next Generation programmer and Terminator Unlooper devices are primarily designed for and purpose of facilitating the unauthorized interception of DIRECTV's encrypted signal.

4.     Whether or not at the time Defendant Caron purchased the devices he knew or should have known that such device(s) had the primary design for the purpose of unauthorized interception of DIRECTV's encrypted signal.

5.     Whether or not Defendant Caron knew or should have known that the manufacture, assembly, distribution, sale and/or possession of the devices he purchased was illegal and prohibited.

6.     Whether or not Defendant Caron retained, rather than discarded, his DIRECTV equipment between June of 1999 and January of 2002.

Respectfully submitted,
PLAINTIFF, DIRECTV, INC.

Date: March 4, 2004        By _____
                              Matthew D. Gordon
                              Skelley Rottner P.C.
                              P.O. Box 340890
                              Hartford, CT  06134-0890
                              (860) 561-7077
                              Fed. Bar No. ct02355

4

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid to the following counsel of record and pro se parties on March 4, 2004:

Kenneth D. Quat, Esq.
132 Great Road, Suite 200
Stow, MA 01775
*978-369-0848*
*978-371-2296 (fax)*
*For defendant, Mike Caron*

Stephen R. Ketaineck, Esq.
140 Captain Thomas Boulevard
P.O. Box 428
West Haven, CT 06516
*203-932-2225*
*203-934-4834 (fax)*

_____
Matthew D. Gordon