UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR 18  A 11: 20

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| DIRECTV, Inc, | ) |
| Plaintiff, | ) CIVIL ACTION 3:03CV0007-RNC |
| v. | ) |
| MIKE CARON et al., Defendant | ) |

## MOTION OF MIKE CARON TO STRIKE AFFIDAVIT OF JAMES F. WHALEN AND EXHIBITS, AND FOR SANCTIONS

COMES NOW Mike Caron, defendant in this action, and moves that the affidavit of James F. Whalen submitted by plaintiff in opposition to defendant's motion for summary judgment be stricken, along with the two exhibits attached thereto. Defendant further moves for an appropriate award of monetary and trial sanctions against plaintiff due to its flagrant disregard of the discovery rules as well as orders issued by the Court in this case.

### Introduction

In this action, plaintiff is attempting to recover damages for defendant's alleged unlawful interception of plaintiff's satellite broadcasting signal. By its own admission,

**ORAL ARGUMENT REQUESTED**

plaintiff does not now have, and did not have at the time of the filing of the complaint, any direct evidence of such interception. Instead, plaintiff's complaint is predicated solely upon evidence that defendant purchased a device which could be used to facilitate unlawful interception. *See* Complaint, paragraph 7.

The Whalen affidavit purports to address the nature of the device allegedly purchased by defendant, draws certain conclusions as to what the purchase of such a device "means" about the intent and activities of a purchaser, and attempts to introduce certain e-mail correspondence of defendant. For the following reasons, the affidavit and exhibits should be stricken in their entirety.

## I. SINCE NEITHER WHALEN NOR EXHIBIT A-2 WERE DISCLOSED TO DEFENDANT, FED.R.CIV.P. 37(c)(1) REQUIRES THAT THE AFFIDAVIT AND EXHIBIT BE EXCLUDED FOR PURPOSES OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Whalen was not disclosed as a potential witness either in plaintiff's mandatory disclosures pursuant to Rule 26(a)(1) (Exhibit A), or in plaintiff's answer to defendant's interrogatory seeking the identities of all individuals "known by you or your attorneys to possess knowledge of the facts relating to the allegations in the Complaint." Exhibit B. Plaintiff has never supplemented its disclosures or interrogatory answers. Affidavit of Kenneth D. Quat (Exhibit C). In addition, Exhibit A-2 was not disclosed as part of plaintiff's mandatory disclosures (Exhibit A) or in response to defendant's Rule 34 request for documents. Exhibit D.[1] Again, neither the disclosures or responses were ever supplemented by plaintiff. Exhibit C. By this Court's order of April 17, 2003,

---

[1] Defendant's Rule 34 Request was clearly designed to elicit the materials contained in Exhibit A-2. For example, Request Number 1 sought "Any and all documents or other recorded material in any format whatsoever supporting DIRECTV'S allegations" that the device purchased by defendant was "primarily deisnged to permit the illegal programming of valid DIRECTV Access Card. . ." Request Number 2 sought all documents which supported plaintiff's claim that the device "is usded to illicity decrypt Satellite Programming," Requests 6, 7, 8 sought all documents which supported plaintiff's claims that defendant possessed, modified, or used an illegally modified access card.

2

discovery closed on October 31, 2003 (the time for the taking of defendant's deposition only was extended by agreement through December 31, 2003).

Fed. R. Civ. P. 37(c)(1) states in pertinent part as follows:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

In accordance with the plain language of the Rule, the directive to exclude witnesses and information not properly disclosed is "mandatory and self-executing." *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001). *See, Lamarca v. United States*, 31 F.Supp.2d 110, 122 (E.D.N.Y. 1998)(exclusion mandated by Rule 37(c)(1) is an "automatic sanction"). It applies with "equal force" to motions for summary judgment as it does to hearings and trials. *Lohnes, supra*, 272 F.3d at 59.

Under these circumstances, exclusion of the affidavit and exhibits is required. As the Rule recites, an exception may only be made where the failure to disclose was with "substantial justification," or the failure was harmless. Neither criteria is satisfied here. First, at least as of the date the complaint was filed (January 2, 2003), and probably much earlier, plaintiff presumably had a basis for the technical information set forth in the affidavit (if it did not have a basis, then the complaint was filed in violation of Rule 11). As the complaint states:

> The programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Card for the sole purpose of obtaining oaccess to DIRECTV satellite programming without paying DIRECTV. The Terminator Unlooper is designed to repair Access Cards that had been rendered unusable by illegitimate use and was specifically designed for use with certain software further permitting the illegal programming

3

of valid DIRECTV access devices.

Despite this, and despite the fact that Whalen indicates he has been employed by plaintiff for "over 4 years," Whalen's involvement in this case as a potential witness was not disclosed to defendant until well after discovery had closed and defendant moved for summary judgment. Accordingly, plaintiff's omission cannot be deemed "substantially justified" as a matter of law. And, second, plaintiff's failure to disclose can hardly be deemed harmless. As the Court declared in *Lohnes,* where plaintiff submitted an expert affidavit in opposition to a summary judgment motion 3 months after the close of discovery:

> The appellant's failure to unveil his expert until after [defendant] had moved for summary judgment deprived [defendant] of the opportunity to depose the proposed expert, challenge his credentials, solicit expert opinions of its own, or conduct expert-related discovery. This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate.

*Lohnes, supra,* 272 F.3d at 60. While for the reasons set forth below defendant believes Whalen is being largely offered as an expert witness, even if not, the prejudice to defendant from not even being informed of a key lay witness is significant. *See Klonoski v. Mahlab,* 156 F.3d 255, 269 )(1st Cir. 1998)(Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion."). There can be little doubt, therefore, that it would be contrary to both the letter and spirit of Rule 37(c)(1) for the Court to countenance this "sneak attack" perpetrated by plaintiff, and the Whalen affidavit and exhibits must consequently be stricken. *Id.*

The fact that Whalen appears to be offered as an expert witness pursuant to

4

Fed.R.Evid. 702 with respect to certain matters further compounds the problem, since plaintiff did not furnish *any* expert reports from the witness *at any time* (they were due by September 1, 2003). The Rule reads in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . .

The rule is "broadly phrased," i.e., "not limited merely to the 'scientific and 'technical' but extend to all 'specialized' knowledge.'" Advisory Committee Notes to Rule 702. By contrast, Federal Rule of Evidence 701 states unequivocally that lay opinions and inferences must be "(a) rationally based on the perception of the witness, and . . . (c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (emphasis added)   Sub-section (c) of the Rule was specifically written to ensure *"that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson."* (emphases added). This is exactly what plaintiff is attempting to accomplish here.

The recent decision in *Bank of China v. NGM LLC,* 2004 WL 293290, confirms that Whalen is being offered as an expert. There, the trial court admitted the testimony of a bank employee as a lay witness under Fed.R.Evid. 701. The witness supplied testimony in three areas: (a) the nature of certain transactions between the parties; (b) "the concept of a 'trust receipt' and how it works in the context of an international commercial transaction;" and (c) "that it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there were no real goods involved."

5

The Court found that the first component of the testimony was admissible since it was based on the witness' "perceptions" and "grounded in the investigation he undertook in his role as a [bank] employee." However, the Court ruled the second two aspects of the testimony inadmissible because they "were not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking." Accordingly, "explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not the result his investigation, were improperly admitted."

In the case at bar, the affidavit makes clear that Whalen did not inspect or test the actual devices at issue in this case (i.e., those allegedly purchased by defendant), and that his purported knowledge was not acquired as a result of a specific investigation undertaken by him into Mr. Caron's activities. Instead, it is replete with purported expert opinions based solely on knowledge acquired as a result of Whalen's background and experience in the field of satellite technology and anti-pirating efforts, to wit:

    a. The devices are primarily designed for the surreptitious interception of DIRECTV satellite programming. Whalen Aff., 4.

    b. The Terminator Unlooper device purchased by Caron is known as an "unlooper" which is primarily designed and marketed to be used in order to gain unauthorized access to DIRECTV satellite programming without payment to DIRECTV. More particularly, the 'unlooper' is designed to restore functionality to illegally modified DIRECTV access cards that were disabled by misuse or by DIRECTV's electronic security measures commonly referred to as Electronic Counter Measures or 'ECMs.' Whalen Aff., 4-5.

    c. Individuals interested in continuing the illegal receipt of DIRECTV programming use an unlooper to restore functionality to a disabled card, thus allowing the access card to once again receive DIRECTV programming for free. Indeed, the term 'unlooper' was coined specifically to refer to devices that restore functionality to 'looped' pirated DIRECTV access cards. Whalen Aff., 5.

    d. Purchase and use of an unlooper is a clear indication of the customers' eagerness to continue illegal access to DIRECTV television programming without payment to DIRECTV. Furthermore, purchase of an unlooper indicates that the person purchasing it already possessed one or more illegally modified DIRECTV access cards. DIRECTV is unaware of any legitimate commercial or private use for unloopers. Whalen Aff., 5.

    e. The Vector Next Generation programmer purchased by Defendant from DSS-Stuff on September 5, 20000 is designed, marketed, and used to permit the illegal programming of – writing of code to – valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. By way of example, the programmer is used (i) to 'clone' Access Cards, enabling an unauthorized (or unactiviated) access Card to decrypt the same programming as a particular authorized (or activated) Access Card; or (ii) to program Access Cards to receive all DIRECTV programming, including pay-per-view events, without payment to DIRECTV. Whalen Aff., 5-6.

    f. [T]he unlooper purchased by Caron is designed to restore functionality to illegally modified Access Cards disabled by misuse or by DIRECTV's electronic counter measures. Therefore, it is reasonably likely that Caron possessed an illegally modified Access Card and began receiving DIRECTV's transmissions without authorization prior to the purchase of the devices on September 5, 2000. Whlen Aff., 6.

    g. Information on the website operated by DSS-Stuff from which the defendant's purchases were made describe devices primarily deisnged and used for the purpose of pirating DIRECTV programming. . . The way in which DSS-Stuff marketed its devices supports my conclusion that its devices were produced primarily for the purpose of receiving DIRECTV programming for free. Whalen Aff., 6-7.

Because the above statements are not based on, or derived from, Whalen's actual perceptions or observations, but are instead simply an outgrowth of his general experience and purported expertise in his field, the plain language of Rule 702 and the *Bank of China* decision instruct that they constitute exert testimony and plaintiff was therefore required to timely provide a report which complied with Fed.R.Civ.P. 26(a)(2)(B), which it cannot deny failing to do. The affidavit must consequently be stricken and excluded from consideration on summary judgment.

## II. SUBSTANTIAL PORTIONS OF THE AFFIDAVIT DO NOT CONSIST OF OF FACTS ADMISSIBLE IN EVIDENCE AND THUS MUST BE EXCLUDED FROM CONSIDERATION ON SUMMARY JUDGMENT.

Fed.R.Civ.P. 56(e) provides that all affidavits submitted in connection with a motion for summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." To a substantial extent, the Whalen affidavit falls woefully short with respect to both requirements.

1. The aforementioned opinions and conclusions. The Whalen affidavit contains no facts which shed any light on how Whalen reached the opinions and conclusions set forth at pages 6-7, above. Presumably, in order to render opinions as to the design and function of sophisticated technological devices, Whalen must have himself investigated and/or tested the devices, or at least have become familiar with similar efforts of others. The affidavit speaks to neither of these issues, and is in fact completely devoid of information as to what testing, investigation, reading, or other inquiries were engaged in by Whalen or others. Moreover, aside from stating that he has been employed in plaintiff's Office of Signal Integrity, the affidavit furnishes absolutely no facts regarding Whalen's background, education, or experience or how, precisely, he acquired "familiarity" with the devices in question. Thus, there is no basis for the Court to find that the statements were made on personal knowledge or that Whalen is competent to have made them.

2. The section of the affidavit entitled "Evidence of Caron's Activity in the Internet Piracy Community." This section of the Whalen affidavit is almost entirely hearsay testimony. Whalen sets forth no facts which would take his statements about

8

defendant's internet postings outside of the hearsay rule or within any exception to the rule. Still other statements are not in the nature of "facts" of which Whalen has personal knowledge and to which he is competent to testify, for example: (a) "Each of these web sites was dedicated to the distribution of software and information related to DIRECTV piracy." (Whalen Aff., 7); (b) Caron's incriminating postings plainly show his involvement in piracy of DIRECTV's programming." (Whalen Aff., 7); (c) "The huabc.com website, which Caron joined on or about October 6, 2001, provides information regarding DIRECTV piracy." (Whalen Aff., 7). Furthermore, there is no competent evidence in the record that the e-mail address major222@hotmail.com belonged to or was otherwise related to the defendant. *See* discussion in Section III, *infra*.

3. The Final Section of the Affidavit. None of the statements contained in the last section of Whalen's affidavit ("Evidence of Unauthorized Access to DIRECTV Programming Shown in Caron's DIRECTV Account History") satisfies Rule 56(e), to wit: (a) "the purchase of an unlooper indicates prior unauthorized access;" (b) "Caron's need to purchase new receivers in 2002 is an indication that he damaged the access cards he had in his possession in 1999 through prior misuse;" (c) "Damage to the pirated access cards explains Caron's need to purchase additional access cards and reconnect programming services in January, 2002;" (d) Based on the account history and gaps in his programming services, Caron's purchases of several devices primarily designed to intercept DIRECTV's programming, and his posting and internet activity, there is little question that Caron gained unauthorized access to DIRECTV programming." None of these statements even qualifies as a "fact," much less a fact admissible in evidence as

9

required by Rule 56(e). To the contrary, they are completely unsupported and self-serving opinions and conclusions not based on Whalen's own perceptions and observations, but rather solely on the outcome which Whalen and Whalen's employer would like to see occur in this case. Such blatant disregard for the rules of evidence and civil procedure should not be tolerated.

### III. BOTH EXHIBITS ARE UNAUTHENTICATED HEARSAY, AND THUS MUST BE EXCLUDED FROM CONSIDERATION ON SUMMARY JUDGMENT.

There is nothing in the Whalen affidavit which permits either exhibit to be considered by the Court in connection with defendant's motion for summary judgment, as Whalen does not even attempt to authenticate the documents or to bring them outside the hearsay rule.

Whalen's only statement which even arguably goes to the admissibility of Exhibit A-1 reads: "Attached hereto as Exhibit A-1 is a copy of the invoice obtained by DIRECTV pursuant to the civil raid at Fulfillment Plus shipping facility located in California." Walker Aff., 4. This hardly is sufficient to authenticate the document, and certainly does not comport with the foundational requirements of the "business record exception" to Fed.R.Civ.P. 803(6). While Whalen is technically correct in stating that "Caron does not dispute that he purchased the devices in question," this does not *ipso facto* provide a basis for the admissibility of a "packing slip" from a company separate and distinct from DirecTV which Caron does not recognize and which contains information to which Caron has not admitted.[2] At a minimum, plaintiff would have to

---

[2] At his deposition, Caron stated unequivocally that he did not recognize the "packing slip" and that he did not recall his e-mail address from that period of time. Exhibit E.

10

produce a proper custodial affidavit from DSS-Stuff.Com in order for the exhibit to pass muster.

Similarly inadequate is Whalen's only statement with respect to Exhibit A-2 is: "Prints of those websites [operated by DSS-Stuff] are attached hereto as Exhibit A-2 . . ." Whalen Aff., 6. Again, Whalen is not, and does even purport to be, a custodian of the documents, and he does not attest to any of the foundational criteria required by Fed.R.Evid. 803(6). Finally, there is nothing in the affidavit or the exhibit itself which even indicates that these were actual web pages that were operational on the internet at any time, much less during the relevant time frame at issue in this case. In sum, the exhibit is completely unsupported, untrustworthy, and inadmissible.

## IV. ADDITIONAL SANCTIONS, INCLUDING AN AWARD OF FEES AND EXPENSES, ARE APPROPRIATE.

Rule 37(c)(1) provides that, in addition to prohibiting the use of the undisclosed information, the Court "may impose other appropriate sanctions," including "payment of reasonable expenses, including attorney's fees, caused by the failure," and "any of the actions authorized under Rule 37(b)(2)(A), (B), and (C)." In this case, the blatant disregard which plaintiff has shown for the rules of evidence and civil procedure is serious, intentional, and part of a larger pattern of misconduct, thus warranting the imposition of additional sanctions. Defendant therefore requests that plaintiff be ordered to pay defendant's expenses and fees incurred as a result of having to bring the instant motion. *See, e.g., Simon v. Safelite Glass Corp.*, 943 F.Supp. 261, 270 (E.D.N.Y. 1996)(monetary sanction for failure to disclose relevant documents found "entirely appropriate"). In addition, in the event summary judgment does not enter for defendant,

defendant requests that James F. Whalen be barred from testifying at trial and that neither exhibit be allowed into evidence at trial, all as dictated by Fed.R.Civ.P. 37(c)(1).

## CONCLUSION

For all the above reasons, defendant Mike Caron respectfully requests that the affidavit of James F. Whalen be stricken and excluded from consideration on defendant's motion for summary judgment. Defendant further moves for an award of reasonable fees and expenses associated with this motion, for an order that the witness be barred from testifying at trial, and for an order that the exhibits not be admissible at trial.

_____
Kenneth D. Quat
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848
978-371-2296 (fax)
Conn. Fed. Bar Number: 24512

Connecticut address pursuant to Local Rule 83.1(c):

> Mirto, Ketaineck, Barrett & DiCrosta, P.C.
> P.O. Box 428
> West Haven CT 06516

### Certificate of Service

I hereby certify that a copy of the foregoing has been served on plaintiff's counsel by mailing same via first class mail, postage prepaid, to Matthew D. Gordon, Esq., Skelley Rottner P.C., P.O. Box 340890, Hartford CT 06134-0890.

_____

Dated: 3/17/04

12