UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DIRECTV, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action 3:03CV0007-RNC |
| | ) | |
| | ) | |
| MIKE CARON et al., | ) | |
| | ) | |
| Defendant | ) | |

FILED 2004 MAR 19 A 11: 20
U.S. DISTRICT COURT
HARTFORD, CT.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIKE CARON'S MOTION FOR SUMMARY JUDGMENT**

Defendant Mike Caron hereby submits this reply memorandum of law in support of his motion for summary judgment pursuant to Fed.R.Civ.P. 56(a).

**ARGUMENT**

**I. PLAINTIFF HAS NOT DEMONSTRATED THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT INTERCEPTED, OR ATTEMPTED TO INTERCEPT, PLAINTIFF'S SATELLITE SIGNAL; SUMMARY JUDGMENT SHOULD THEREFORE ENTER ON COUNTS I, II, AND V OF THE COMPLAINT.**

A. **Plaintiff Has No Evidence That Defendant Possessed the Requisite Software to Intercept Its Signal.**

Counts I, II, and V of the complaint are based on defendant's alleged interception, or attempted interception, of plaintiff's satellite television signal. In response to Caron's motion for summary judgment, plaintiff goes to great lengths arguing that "circumstantial evidence" exists which creates a genuine issue of fact that Caron engaged in such

**ORAL ARGUMENT REQUESTED**

conduct. This effort is futile, since plaintiff has *no* evidence, direct or circumstantial, which shows that defendant ever had the necessary software to accomplish interception.

That special software is required in order to intercept a satellite signal is undisputed. Defendant posed the following interrogatory to plaintiff:

> INTERROGATORY NUMBER 5. Explain and list in detail each piece of hardware and software Defendant is required to have in order to illegally receive DIRECTV's satellite programming.

Plaintiff answer, in pertinent part, was as follows:

> RESPONSE: ... Unauthorized viewing of DIRECTV's satellite signals can be accomplished using various types of software used to decode DIRECTV's satellite signals for use without authorization. The devices purchased by Defendant Caron were sufficient, *when used in conjunction with DIRECTV satellite signal receiving equipment and certain software,* to allow Defendant Caron to gain unauthorized access to DIRECTV's satellite signal without purchasing any additional devices.

Exhibit A (emphases added)   Plaintiff reiterated this same position in answering another interrogatory:

> INTERROGATORY NUMBER 6: Explain and list in detail each and every "Pirate Access Device" which Defendant purchased as alleged in paragraph 15 of the complaint.
>
> RESPONSE: ... Using the programmer *and pirate software* widely available on the internet, a DIRECTV access card can be illegally modified to receive DIRECTV satellite television programming without authorization by or payment to DIRECTV.

Exhibit A (emphases added)   And, finally, plaintiff left no doubt as to the need for special software in still a third interrogatory answer:

> INTERROGATORY NO. 16: Could defendant illegally receive DIRECTV satellite programming if he possessed all the hardware (satellite dish, receiver, access card) but not the relevant software? If "yes," explain how.
>
> RESPONSE: ... DIRECTV is currently unaware of a method in

2

which an individual can receive DIRECTV's satellite signals without software.

Exhibit A.

Accordingly, since plaintiff has not proffered any evidence that defendant had the necessary software and agrees that it was technologically impossible for defendant to intercept its signal without such software, defendant is entitled to summary judgment on Counts I, II, and V of the complaint.

### B. There is No Competent Evidence Before the Court That Defendant Possessed All the Necessary Hardware to Intercept Plaintiff's Signal

In his affidavit, defendant attests that shortly after discontinuing his initial DirecTV subscription in June, 1999, he threw out his satellite dish and did not acquire another until preparing to re-subscribe to DirecTV in January, 2002. Plaintiff has offered no evidence to the contrary. Therefore, during the period in which plaintiff alleges defendant intercepted (or attempted to intercept) its signal, defendant was incapable of doing so.[1] In his interrogatory number 5, defendant asked plaintiff to identify "each and every piece of hardware and software Defendant is required to have in order to illegally receive DIRECTV's satellite programming." Plaintiff responded, in pertinent part: "At a minimum an individual needs a fixed outdoor satellite dish and a satellite receiver . . . " In addition, defendant posed the following interrogatory to plaintiff:

> Interrogatory No. 15: Could Defendant illegally receive DIRECTV satellite programming if he only possessed a Receiver and Access

---

[1] Interestingly, and not surprisingly, even at this late stage of the litigation plaintiff has not articulated any specific period of time during which defendant is alleged to have intercepted its signal. However, it appears to be focused on the period between the time defendant discontinued his subscription in June, 1999 and the time he re-subscribed in January, 2002. Clearly, the amount of money which defendant paid plaintiff during these subscription periods, which included multiple purchases of pay-per-view programming, is inconsistent with pirating.

3

> Card without having a satellite dish? If yes, explain.

Plaintiff responded as follows:

> RESPONSE: DIRECTV is currently unaware of a method in which an individual can decrypt DIRECTV's satellite signals, with only a DIRECTV access card and IRD unit in use.

Exhibit A. Thus, during the period of time when plaintiff apparently believes defendant engaged in pirating its signal, defendant was technologically incapable of doing so. Defendant is therefore entitled to summary judgment on Counts I, II, and V of the complaint.

### C. There is No Competent Evidence Before the Court That The Subject Devices were "Pirate Access Devices" or That Defendant Acquired or Used Them for an Unlawful Purpose.

Defendant has attested that he acquired the devices in question for the express purpose of programming a "smart card" for a wall safe he had purchased, that they were marketed and sold to him on that basis, and that he only used them (unsuccessfully) for that purpose. Def.Aff., 5-6. There is no competent, admissible evidence before the Court to the contrary. *See* Motion to Strike Affidavit of Bill Gatliff, and Exhibits; Motion to Strike Affidavit of James F. Whalen, and Exhibits; Motion to Strike Exhibit A to Affidavit of Scott Madvig; Motion to Strike Affidavit of Lacey Walker, Jr., and Exhibits. However, even if such evidence existed, the decisions in *DirecTV v. Bush* and *DirecTV v. McFadden* instruct that plaintiff would still lack sufficient circumstantial evidence from which a reasonable trier of fact could infer interception, a conclusion buttressed by the recent ruling in *DirecTV v. Garnett,* Case No. C-03-346 (February 26, 2004, S.D.Texas)(Exhibit B). In *Garnett,* plaintiff claimed that defendant's purchase of "a combination package" consisting of a reader/writer and unlooper, combined with the fact

that defendant was a DirecTV subscriber, constituted sufficient evidence that defendant illegally intercepted plaintiff's signal. However, the Court allowed defendant's summary judgment motion on the basis of facts nearly identical to those present here: (a) there was no evidence that defendant admitted to illegally receiving, or attempting to receive, plaintiff's signal; (b) there was no evidence that defendant had any special training in computer technology; (c) plaintiff acknowledged that the programmer purchased by defendant had legitimate uses;[2] and (d) defendant's DirecTV account history was not suspicious for pirating activity.[3]

With respect to this last factor, the position taken by plaintiff that defendant's account history reflects pirating activity is, in a word, preposterous. The history shows that defendant terminated his DirecTV subscription in June, 1999, yet plaintiff has submitted no evidence, circumstantial or otherwise, that at this point in time defendant had the necessary software or other equipment necessary to continue receiving plaintiff's signal without authorization. Indeed, plaintiff has not submitted *any* evidence to rebut defendant's sworn statement that he threw out his DirecTV satellite dish shortly after terminating this subscription. Moreover, the devices at issue in this case were not purchased until well over a year later, in September, 2000, and there is no evidence that defendant had a satellite dish or the necessary software at that time or indeed at *any time*

---

[2] In the case at bar, one of plaintiff's proposed witnesses, Bill Gatlif, confirms that a programmer such as the kind purchased by Mr. Caron, also known as a reader/writer, has a number of legitimate uses and can only alter a DirecTV access card when used in conjunction with "DIRECTV-specific piracy software." Expert Report and Disclsures of Bill Gatliff of Netrino, LLC (Exhibit A to Plaintiff's Opposition). Gatliff submitted an affidavit on behalf of plaintiff in *Garnett*. There, the court noted that "[Gatliff] acknowledges that even 'dumb' reader/writers are used in the legitimate business community, and opines only that a reader/writer *could* be used to circumvent DIRECTV access." *Id.* at 11.

[3] The *Garnett* court easily distinguished cases where courts had denied summary judgment because there was evidence that the defendant possessed the necessary equipment to intercept a signal, that the devices purchased were in fact "pirate" in nature, and defendant admitted knowledge of the devices' designs and having purchased them for the purpose of intercepting a satellite signal. Obviously, the facts of the present case are far different.

5

prior to January, 2002, when defendant re-subscribed to DirecTV in anticipation of being laid up due to knee surgery. *See* Defendant's Affidavit, ¶7. In short, plaintiff's entire position is predicated on the mere *assumption* that defendant's discontinuation of his DirecTV subscription, followed by a purchase of certain devices over a year later, is sufficient to create a genuine issue that defendant pirated, or attempted to pirate, its signal. Fortunately, the case law does not support such a leap. Indeed, to the contrary, defendant's conduct is completely consistent with his innocent and rational decision to change his television provider, and completely *inconsistent* with pirating activity. At a minimum, given the complete absence of evidence that defendant possessed the necessary hardware and software to pirate plaintiff's signal, the absence of competent, admissible evidence that the items purchased were pirate devices, and defendant's irrefuted description of his conduct, the conclusion reached by the court in *Garnett* is also warranted here: "DIRECTV has offered no evidence that [defendant] actually used the device to intercept one of DIRECTV's signals such that it has standing to sue under the Act as an aggrieved person." *Id.* at 11. Accordingly, summary judgment should be entered for defendant on Counts I, II, and V of the complaint.[4]

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III OF THE COMPLAINT BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION FOR A VIOLATION OF 18 U.S.C. 2512(1)(b) AND THERE IS NO COMPETENT EVIDENCE THAT DEFENDANT POSSESSED A DEVICE WITHIN THE SCOPE OF SAID STATUTE.

In perhaps the most recent of the numerous decisions holding that 18 U.S.C. §2520(a) does not provide plaintiff with a private right of action for an alleged violation

---

[4] With respect to Count V, the conversion claim, defendant notes that plaintiff has not responded to his argument that under Connecticut law there can be no tortious "conversion" of intangible property such as a satellite television signal.

of 18 U.S.C. §2512(1)(b), the United States District Court for the Western District of Washington declared:

> [Section 2520(a)] makes the person "engaged in that violation" liable for "such relief as may be appropriate." As a matter of grammar and sentence structure, the phrase "that violation" refers to the interception, disclosure, or intentional use of communications mentioned earlier in the sentence, and not to other conduct such as the possession of prohibited devices. Accordingly, the Court finds that the language of §2520(a) does not provide DirecTV with a private right of action against those possessing devices in violation of §2512(1)(b).

*DirecTV v. Aaron Hart,* Case No. C03-0769C (RSL)(March 8, 2004, W.D. Wash.). Exhibit C.

Plaintiff's attempt to save Count III must fail for another, equally fundamental, reason: it has not furnished any competent, admissible evidence that the design of the devices at issue in this lawsuit "renders [them] primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications," or, moreover, that defendant knew or had reason to know of such design, all as required under 18 U.S.C. §2512(1)(b). *See* Motion to Strike Affidavit of Bill Gatliff and Exhibits; Motion to Strike Affidavit of James F. Whalen and Exhibits; Motion to Strike Affidavit of Lacey Walker, Jr., and Exhibits.

Accordingly, summary judgment should be entered for defendant on Count III of the complaint.

## III. THERE IS NO COMPETENT, ADMISSIBLE EVIDENCE THAT DEFENDANT MODIFIED ANY DIRECTV ACCESS CARD.

Plaintiff attempts to salvage Count IV of the complaint on the sole basis of a certain alleged e-mail from defendant which plaintiff claims "obviously" refers to DirecTV's access cards, as well as its claim that the devices "were designed to modify"

7

access cards. Plaintiff's Opposition, 22. The problem for plaintiff is that none of this evidence was disclosed and none of it, in any event, is admissible; therefore it may not be considered on summary judgment. *See* Motion to Strike Affidavit of Lacey Walker, Jr. and Exhibits; Motion to Strike Affidavit of James F. Whalen and Exhibits; Motion to Strike Affidavit of Bill Gatliff and Exhibits. Consequently, there is no evidence to rebut defendant's assertion that "I never knowingly manufactured, assembled, or modified any unlawful or 'pirate device,'" and that until being sued by plaintiff "I did not know that DirecTV access cards could be re-programmed to illegally intercept a signal." Def.Aff., 8. Summary judgment for defendant is therefore warranted on Count IV of the Complaint.

## CONCLUSION

For all the above reasons, as well as those set forth in defendant's motion, defendant is is entitled to summary judgment as a matter of law on each count of the complaint.

Respectfully submitted:

_____
Kenneth D. Quat
9 Damonmill Squre, Suite 4A-4
Concord MA 01742
978-369-0848
978-371-2296 (fax)
CT #24512

Connecticut address pursuant to Local Rule 83.1(c):

> Mirto, Ketaineck, Barrett & DiCrosta, P.C.
> P.O. Box 428
> West Haven CT 06516

## Certificate of Service

I hereby certify that a copy of the foregoing has been served on plaintiff's counsel by mailing same via first class mail, postage prepaid, to Matthew D. Gordon, Esq., Skelley Rottner, P.C., P.O. Box 340890, Hartford CT 06134.

Dated: 3/17/04